Good morning. I represent 14 truckers whose paychecks were withdrawn from on the belief that that money would be deposited into their medical plans, which was never done, over the course of about five months. There's a number of issues that we have to go through in order to get there, apparently. It's a simple case, but it's made complicated by a number of issues, including I'll start with ERISA, unless the court wants to hear. I would like to start with whether or not the Oregon statutes contain a private right of action. Okay. With respect to the first and second claims for relief, the improper withdrawal of the wage claim comes under the wage claim laws. The definition of what can be done is under 652-6103. And what can't be done? 652-615 makes it improper for the withdrawal once it becomes an unlawful withdrawal. And 652-6104, essentially, after seven days, if the money hasn't been put where it was supposed to go, it becomes an unlawful withdrawal. So, in other words, 652-6104 claims are 652-6103 violations. Otherwise, it would be ridiculous to distinguish the 652-6104 type violations from 652-6103, because essentially, all that, you know, opponent is claiming that because there's a statutory under 9-100, a penalty for that type of action, that that's sufficient. Well, counsel, could you just help me understand which of these, the ones you cited, 652.6103, 652.615, or 652.610, contain language that creates the right to private enforcement? Okay. The private right of relief comes under ORS 652-615. Okay. Creating a private cause of action for a violation of 6103 for actual damages or $200, whichever is greater. 652-6104 defines when a 652-6103 action becomes unlawful. So, in other words, 652-6104, when an employer deducts an amount from an employee's wages, as required or authorized by law or agreement, otherwise, in other words, as allowed under 652-6103, the employer shall pay the amount deducted within the time required by the law or the collective bargaining agreement, or if no time is specified in the collective bargaining agreement, which is the case here, within 7 days. Okay. Just so I'm on the same page as you. So 652.615 provides for a private cause of action for a violation of 652.6103. Correct. But not for 6.104. Well, it doesn't specifically mention 4. So why should we say that there is a private cause of action for 6.104 if the statute names one but not the other? Because the 4-type violation defines when a 652-6103 permitted action becomes unlawful. So, in other words, these violations are, in fact, violations of 652-6103. Now, with respect to the trust. I suppose the Oregon legislature was so careful. I'm sorry? The Oregon legislature was so careful when they wrote these statutes. Well, Your Honor, I do. I kind of thought it was kind of funny when, you know, they very specifically designated 4 but not 3. The legislative. Why do you suppose that was the case? Well, the legislative history, 652.6104 was codified after 652.6153. So 3 was an initial action. So, essentially, 4 was only intended to define when a 3-type violation becomes unlawful, Your Honor. With respect. But that's so 652.710 and 652.720 do not contain language setting forth a private right of action. Would you agree with that? Correct, Your Honor. With respect to those statutes, that 652.720, Your Honor, 652.710 indicates that monies that are withheld for formal wages for the purposes of providing medical care are trust funds. They establish trust funds. And the employee-employee relationship is a sufficient special relationship to when you look at the statute, creates the obligation of the employer as a trustee to provide the funds where they were supposed to be earmarked and not to commingle them. But doesn't subsection 4 of 652.710 say that these subsections are to be administered by the commission of the Bureau of Labor, which in itself implies that there's no private right of action? Well, that's not the end of the analysis, Your Honor. The question is, does the violation, does the remedy, is it sufficient to satisfy the harm to the employees? And appellants indicate that it isn't. Well, so what case from Oregon are you relying upon to support your argument that sections 652.710 and 652.720 should be read to support a private right of action? There's, Your Honor, there's no specific case that defines and interprets these statutes. It's a common law right of a trust obligation in a fiduciary setting when one entity holds itself out and in confidence the other one relies on the answer. It's not a common law action. It's statutory. The Oregon legislature has articulated this cause of action. So we're no longer in the common law realm. We're in the statutory realm. And if the statute does not set forth that there's a private cause of action, how do we get there? We can't go back to common law if it's a statutory creature. Well, the statute, it's not statutory created other than the language of the statute. It's codified. It's codified as a trust obligation. And when it's a trust obligation, you can apply the common law. But you can't give me a case that says that, though. Well, there's even the case of Hoffman versus, excuse me, the Conway. OK, excuse me. In the Hoffman case, it recognizes that in certain circumstances the employer has fiduciary obligations to the employee. And it's based on a special relationship of the employer to the employee. With respect to the common law claim exists because of the trust obligation that's specified in the statute. So tell me this precise language in Hoffman that you're relying upon to support your proposition that these codified duties create, excuse me, a private cause of action. What's the precise language? It's a very short case. It's a short case. And the case states essentially that in certain circumstances a trust obligation can arise. What page are you on? Because at 533, let's see, 900 P. 2nd, 533, it seems to say the legislative scheme does not contemplate a separate right of the claimant to recover against an employer for the failure to comply with the obligation to provide insurance. So what language are you using? There is dicta in that case that states, Your Honor, that in certain circumstances a trust obligation can arise. And not in that case did the trust obligation arise. Where is that language, though? I'm looking for the language. What paragraph? This is a worker's compensation case, correct? Correct. It's a worker's compensation case, Your Honor. And it was whether the employer had a duty to furnish worker's compensation coverage. And because of the specific statutory language that made the worker compensation system exclusive, that in that case the finding was there was no trust obligation. But the language of that case, I don't have it specific on the page reference, Your Honor, but the language is in certain circumstances a trust obligation can arise between the employer and the employee. I don't see that language. Maybe when you come back on rebuttal you can point me to it. Before your time runs out, I did want to have a brief conversation with you about preemption. Preemption. Right. So in this case, after our remand from the first go-around case, the district court declined to accept supplemental jurisdiction over the statutory causes of actions that we're talking about. Correct. And it went back to State court. Correct. Gets into State court and you add causes of action for? Interference with economic relations and conversion. Right. Okay. So then the other side removes it under 301 and under ERISA, 502, I forget what they are. 502 and 514. Right. And 301 under LMRA. Yes. Right. And they argue that there's complete preemption. So it comes over and that's what gets us completely, if the cause of action is completely preempted, that gets us Federal court jurisdiction. Correct? Correct. The 502, section 502 creates the jurisdiction. Why aren't those causes of action, the two new ones, the common law cause of action for conversion and the claim for interference with contractual relations, why aren't those completely preempted? They aren't, Your Honor. Why not? When you say complete under 502, because none of the individuals involved here were participants in the plan. It doesn't relate to the plan. Well, talk about what, when you talk about relate to, you're talking about ERISA. Talk about LMRA. Okay. Address the LMRA claim. Okay. The third claim of conversion is, relates to the statutory claim, the independent action, the statutory claim under, first part of it, it's a mere reference to this collective bargaining agreement. It doesn't require, it doesn't require interpretation under the collective bargaining agreement. So your argument with respect to conversion is that conversion is a state statutory right that's independent of the collective bargaining agreement? It's independent of the collective bargaining agreement. And to litigate that claim, you don't have to interpret the collective bargaining agreement? You don't have to interpret the collective bargaining agreement, and it's based on the statutory requirement of putting the seven-day period of failure to earmark that money for the medical plan. So, therefore, it's an exception to the grievance process, and it doesn't require any interpretation of the collective bargaining agreement. What about the other cause of action, interference with contractual relations? Why isn't that, that seems to be derived, founded on the collective bargaining agreement? These are, these claims under the Cobold analysis are unlike the implied money had and received claim. There's no implied, they're not based on an implied contract. The interference with economic relations claim is based on the interference with the economic expectancy of having a benefit when it wasn't. But that all derives from the CBA. I'm sorry? That comes from the collective bargaining agreement. It comes from the agreement, but it doesn't require any interpretation. Well, then, if it's found, if it's ultimately founded on the agreement, then it's completely preempted under the LMRA. And you're in Federal court. The interference of the economic relations claim has nothing to do with the collective bargaining agreement. It's the seven-day failure to provide payment into the, into the funds, essentially, that's what it, what it issues. And it's by. But the interference comes from the obligation under the collective bargaining agreement to transfer the employee's deduction to the trust fund. And it's based on an objective, the wrongful means of the interference is based on the statutory references to both 652-610 and 652-720. That's the wrongful means. So it's an independent state. It's based on independent state requirements, not solely on the CBA. So let me ask you this. Under, what about under ERISA, either 501 or 514? Well, ERISA, ERISA, the ERISA plan is only remote in the background. None of the cases, you look at the, whether the employer is an administrator, claims administrator, a claims sponsor. Here the employer is neither. And, and neither are any of the truckers' participants in the plan. And it doesn't require any, any detailed analysis of the plan. It doesn't require analysis of the plan at all. The plan, all the cases, the Elmont case, the Albion case, Nagel case, those are case, this is a case involving the improper withholding of funds from an employee's paycheck. This has nothing to do with the ERISA plan. So we only get to Judge Rawlinson's concern about whether or not there's a private cause of action if there's no preemption at all? I'm sorry. I didn't hear that. I'm sorry. We only get to the issues that Judge Rawlinson was concerned about, whether there's a private right of action under the statutes. Correct. If there is no preemption. Then, then the issue is whether there is private right of relief under the first or second claims, and then the third and fourth claims exist independent of whether there's private right of relief under those two claims. When the courts, when the court is unable to discern whether, one way or another, whether what the legislative, what the intent was, then the question is, is what the court is doing within the policy of the statute in protection of the individuals? Let me just, this is just an aside. You started off with it when you stood up here in front of us. What are the damages that they're seeking? Damages? I mean, ultimately the money was paid over, and everybody got on their, everybody got onto the health plans, and they got, I guess, their benefits under the health plans. So what are the damages, and why is that? Damages are There's 10 years of litigation. I agree, Your Honor, about the 10 years of litigation. It's actually seven, but what was at issue is the emotional distraught, the individuals involved not having insurance and not knowing about it during that period of time. And it's emotional distress claims relating to that. And mind you, Let me ask you this. If under, let's just say during that period of time one of the, one of your clients had suffered some medical care needs and went and obtained medical care, and it was to get paid for that money? Your Honor, that, the question whether there, it's an exception under the agreement because, Your Honor, it's based on the independence. I'm not saying could they. Could they have done that? I'm not certain, Your Honor, whether they could have or not. All right. Well, you're over your time, so thank you very much. Okay. Thank you. I'll give you a minute or two for rebuttal. I'm sorry? I'll give you a minute or two for rebuttal. Thank you. Thank you. May it please the Court, Counsel, Ivan Resendiz Gutierrez for defendant appellee Ross Silentzan and Gravel. There's a number of issues that the Court has touched on in this case. So it seems like the Court is particularly interested in the no private right of action and in the complete preemption. But I just want to make sure we understand what's going on here. Defendant appellee's argument is that Section 514 of ERISA expresses preempts all the claims. Section 502 of ERISA completely preempts the two new tort claims. Section 301 of LMRA also preempts the two new tort claims. And then if there's no 514 preemption, then the Court can go into whether there's a private right of action for the original statutory claims. And, you know, the Court has articulated different tests. I'll actually start with complete preemption. We need to get federal court jurisdiction because you removed it. Right. And the Court has two jurisdictional bases for jurisdiction here, and that's Section 502 of ERISA and LMRA 301. I'll start with ERISA 502. And the test there is actually pretty simple. It's a conjunctive test under Davila. And the question that the Court asked there is, could they have brought a claim under ERISA 502A1B? And what that section says is a civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights or future benefits under the plan. I thought opposing counsel said that they were not beneficiaries of the plan. No. Your Honor, if I understand counsel, he was saying that they're not planned participants. Okay. But they are planned beneficiaries. So what they could have done here, along with proceeding under the CBA, the grievance and arbitration procedures there, sorry, they could have brought a claim against the plan under 502A1A, saying we're here to try to recover the health benefits we're entitled to. Would that help address the conversion claim and the interference with economic benefits claim? That's right, Your Honor. That you can bring that kind of action in an ERISA case? Well, what they're arguing is, in their complaint, is we, under the conversion is we are entitled to health benefits under the employment agreement and under the ERISA plan. And under the interference claim, they specifically know, I believe it's, they talk about interference with the health care entitlements. Would they be able to get redress for emotional distress in that type of an action? They would not, Your Honor, and there's a reason for that. ERISA is a very comprehensive, you know, detailed statute that provides, that actually specifies who can bring an action against who and what can they recover. And emotional distress damages are not one of the damages enumerated under the statute. Well, is that, does that then meet within the preemption definition if they're not able to bring the tort claim that they're asserting? That's not the test, Your Honor. It's not whether they're, the test under DAVALA is not whether they can or cannot bring a tort claim. The simple test is, could they have brought a claim under ERISA, and if they're complaining about their health benefits, they could have brought that claim against the point. But they're complaining about... I'm sorry. I'm sorry. Go ahead. But they were complaining about more than the denial of the health. That's the point they're making is they were complaining about more than just the mere denial of the benefits. They were complaining about the emotional distress that was brought upon them because of the turmoil of not having the health benefits. I understand that, Your Honor. And here what we have is the situation where the law provides either under ERISA, here's the remedies that you're entitled to. You can get your health benefits back. And that can make you, as this Court in Cobol said, you know, Ross Island, and they negotiated the settlements and resolved the outstanding grievances. Ross Island paid back the health care premiums. That could have happened under ERISA. It also happened under the CBA, and that's the remedy. That's what they get back. And ERISA does not allow a claimant or a plaintiff to circumvent the statute, which, you know, resulted after, I believe, a 10-year study by Congress to say, here's who can bring a claim, here's what you can bring it for, and here's what you get back. But isn't the conversion claim sort of independent of this benefits claim that you just went through with Jed Ross? No, I don't think so because it – But doesn't it come from – it's not derived from the collective bargaining agreement or the plan, which I've never seen, the medical benefits plan. It comes from a different source. It comes from state law. I would disagree, Your Honor. I would compare the conversion claim and the interference claim with the money had and received claim in COBOL, which is – what they're complaining about is a contractual entitlement under the CBA, which also references the plan and notes that the withdrawn amounts need to be forwarded to the plan. So our position is that their claims are – they don't exist just in the ether. The only reason their plaintiffs are entitled to health care benefits is because of the collective bargaining agreement and because of the plan. Let me ask you, is there a difference in the way you analyze the conversion claim under 501 versus 514? Under 502, Your Honor, yes. 502 versus 514. Yes, they are different. So is it possible that it could not be completely preempted but could be preempted under 514? That's right. Yeah, it could be preempted because the test under 514 is whether – well, there's – the court has articulated a different test in the definition of what relate to means, and there's a connection with test, which this circuit says means whether there's a relationship with an ERISA-regulated relationship. And then there's a reference to test. But really what the court is asking there is whether the claim is premised on the existence of an ERISA plan and whether that plan is essential to the claim's survival. And here, there is no conversion claim, there is no intentional interference claim without the plan because that's why they're – I apologize. Sorry. So here's the issue is with the conversion and the intentional interference. Yes, they're complaining about the fact that they didn't get the health benefits and the worry about that. I understand what you're saying is related to ERISA, but the issue really is isn't conversion and intentional interference more than just you didn't give me my health benefits, which would be an ERISA claim. It was you didn't give me my health benefits and you took my money and you took it. You didn't put it in the plan to give me my health benefits. So what about that aspect of intentional interference and conversion? Right. There's two different pieces here is, one, the authorization to withdraw the funds and then the obligation to move the funds once you take them out to the trust. That's also in the collective bargaining agreement in the plan. The only reason why Ross Islands needs to do what they need to do is because of those two documents. There's no – and plaintiffs don't point to it in their first amendment complaint. Some other basis, statutory basis for obligating Ross Island to provide health care benefits to make the contributions. Do you want to turn to private cause of action? I'd love to, Your Honor. Great. Yes. You know, this is a – I think it can be a very interesting claim because, you know, the court, again, has another test. I know I've been bombarding the court with tests today. But, you know, it's very simple under Deckard is whether – you know, there's a few factors, but really the one that we can focus on is whether the Oregon legislature expressly or impliedly intended to create a private right of action for these two violations. And the court has said that that's the statutory analysis under Gaines, which the Oregon legislature or the Oregon Supreme Court has articulated. And that's – let's look at the text and the context, and then let's look at the legislative history if we're still confused. And here I think, you know, it's very telling, as Judge Paez was talking about, that ORRS 652, 610, 615, the way it describes whether there's a private right of action for subsection 3, but there's not one for subsection 4. And I think – and, you know, the court has to take into consideration that the legislature under ORRS 174-010 is do not insert what's been omitted and do not omit what's been inserted. And here, when they looked at the statute in 2007, subsection 4, they didn't include it in 615. And the court doesn't need to be troubled by whether there's a remedy here for the plaintiff's one that's, you know, not part of the test. But – and here's why I think it's really important, and the court in Coble talked about this. 610-3 and 610-4 do different things. 610-3 talks about the authorization to deduct the funds, and so the employee there is harmed if an employer is not authorized and withdraws money. 610-4, however, deals with the obligation to move – once you have the funds, to take and put them and send them somewhere else. And so the person harmed in that case is not necessarily the employee, but instead the intended recipient. And so they're addressing two harms. And, you know, when the employee is harmed under subsection 3, I think it does make sense for there to be a private right of action for that wrong, because you were not – never authorized to withdraw the money. But for subsection 4, you know, saying you did have authorization, you just didn't send it where you needed to in time, you know, then there's a civil penalty that comes in mind. And it's not, you know, de minimis. It's $1,000 per violation. And, you know, Judge Rawlinson was talking about, well, can you point me to a case that says that these two or these three statutes here, also 710 and 720, where there is a private right of action and there isn't one. And I think I would point the court to Searles v. Beneficial or Inc. that's cited on page 54 of our brief, where then Justice – Judge Graber on the Oregon Court of Appeals talked about because the director of the Department of Insurance and Finance has authority to enforce RRS 7205060, there is no need to recognize a private right of action to carry out the statutory policy. I would say that the same analysis applies here. So, counsel, it's your strongest case for ERISA preemption, the Davila case? Well, under 502 complete preemption, yes, that's one of the cases that I would point the court to, and that's what the test is. And there is no need to – once the court determines that the claim could have been brought under 502 – well, actually, no, yes, you do have to look at both tests there and look at whether there is another independent duty implicated here, and there just simply isn't. If the court wants another case citation, I'm happy to give it for LMRI. I was just curious what you felt your strongest case for preemption is, and I thought you relied on Davila quite a bit. Yeah, no, we have – so that's the case that talks about more the test for this case here. I would also point the court to – for preemption, I would point to Filler v. Blue Cross in California, Prince v. Searles Holdings, and Moore v. Apple Care. You know, we haven't really talked about – actually, I do want to clarify under Section 301 of the LMRA, the court doesn't need to get to the analysis of the CBA for the new tort claims. That's – the court has articulated the test in Burnside, which is a two-part test, and that's – the first question is, if the right exists solely as a result of the CBA, then the claim is preempted and then there's no further analysis. Only if the court disagrees with appellees on that point, then does it move on to whether the right is nevertheless substantially dependent on the analysis of the CBA. Apply that analysis, apply that test to conversion and to interference with contractual rights. Yes, Your Honor, under the first part, as I mentioned, there is no – the conversion claim and the interference claim, and they're complaining about the entitlement to health care benefits, those are contractual duties under the CBA and under the plan. But the tort of the conversion seems to have a different source. No, because what they're complaining here, Your Honor, is you were – you had to deduct this money and then transfer it over to OTED. Those are obligations that stem directly from the collective bargaining agreement. There's no other reason why they – why Ross Island was authorized to do that, to one deduct and then to forward. That's directly from the CBA. I'd point the court to Sections 11.1 and 11.3 in the CBA. So if there had been no collective bargaining agreement, would there be a cause of action? If there was no CBA? Yeah. I think that's a – well, they would still have to deal with ERISA, whether there's a plan out there dictating the tort. I'm talking about the LMRA. Right, but if there was no collective bargaining agreement talking about this is what you're supposed to do, I think that plaintiffs might have a better – well, they might have a – you know, for example, one of the cases, you know, at least the Hillsborough – and I see I'm over my time. May I finish? The Hillsborough garbage case does talk about, you know, if there were separate agreements in place, then, you know, then maybe there's a case. Thank you, Your Honor. Thank you, Daniel. I'll give you a minute and a half. I'm sorry? One and a half minutes, 90 seconds. Okay. Thank you, Your Honor. How do you do it? 502 does not apply here. None of the individuals involved could have taken action under the plan. They were neither beneficiaries nor participants. Money never went into the plan. They weren't covered under the plan. This is an action for recovery of withholding of wages, not an action under the plan, not an action for benefits involved. With respect to – Opposing counsel said it is an action for benefits. Why is there a disagreement on that point? Not any specific benefit. It doesn't require an analysis of the plan of what the benefits were. This is just a total denial of any medical benefit. The conversion claim is based on the elements of the exercise of dominion over the chattel, the chattel being the money that was withheld and has nothing to do with the CBA. The failure to earmark the money with where it was supposed to go within the seven-day period based on the statute and not solely based on the agreement of the CBA. So the conversion claim essentially is an independent claim, could not have been an exception to the grievance process under the CBA. The interference economic claim is the same. It's based on the denial of an expectation, of an economic expectation, and the wrongful means is based on the independent statutes, 652610 and 652720. The trust obligation arises out of the common law, understanding that an employer and an employee are in a special relationship. The statute itself expressly states that these are trust funds not to be commingled, and the cases allow for, in certain circumstances, in the employee, the Boudwig case, employee-employee relationship allows for a trust claim. Thank you, Your Honor. Thank you. Thank you. Thank you, Counsel. This interesting case is submitted, and I appreciate your arguments this morning.
judges: Paez, Rawlinson, Kobayashi